IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AOS HOLDING COMPANY and
A. O. SMITH CORPORATION,

      Plaintiffs,

v.

BRADFORD WHITE CORPORATION,

      Defendant.

C.A. No. 18-412-LPS-CJB

John C. Phillips, Jr. and David A. Bilson, PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A., Wilmington, DE

S. Edward Sarskas, MICHAEL BEST & FRIEDRICH LLP, Milwaukee, WI

Kenneth M. Albridge III, MICHAEL BEST & FRIEDRICH LLP, Madison, WI

    Attorneys for Plaintiffs.


Andrew J. Koopman and Christopher H. Blaszkowski, RatnerPrestia, Wilmington, DE

Benjamin E. Leace, RatnerPrestia, King of Prussia, PA

    Attorneys for Defendant.

**MEMORANDUM OPINION**

January 25, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiffs AOS Holding Company ("AHC") and A. O. Smith Corporation (collectively, "AOS" or "Plaintiffs") filed suit against Defendant Bradford White Corporation ("BWS" or "Defendant") on March 16, 2018, alleging infringement of U.S. Patent No. 8,375,897 ("the '897 patent"). (D.I. 1) The '897 patent "relates to a gas water heater, and more particularly to a gas water heater that utilizes a power burner and an exhaust plenum to permit natural convection exhaust of products of combustion." ('897 patent at 1:11-15) Defendant moved for a "Super-Early Claim Construction Hearing" because the single patent-in-issue has only a single claim, which Defendant believes is indefinite. (D.I. 24-1 at 1) Plaintiffs agreed to request this early claim construction process (D.I. 29), which the Court granted. The parties completed briefing on October 19, 2018 (D.I. 40, 41, 45, 47) and the Court held a claim construction hearing on November 27, 2018. (*See* D.I. 55) ("Tr.")

## I. LEGAL STANDARDS

### A. CLAIM CONSTRUCTION

The ultimate question of the proper construction of a patent is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation and internal quotation marks omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in

1

question at the time of the invention, i.e., as of the effective filing date of the patent application."
*Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent "specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . . [b]ecause claim terms are normally used consistently throughout the patent." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope

2

using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (alteration in original) (internal quotation marks omitted).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

"In some cases, . . . the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports

3

and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (quoting *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

### B. INDEFINITENESS

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). A claim may be indefinite if the patent does not convey with reasonable certainty how to measure a claimed feature. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). But "[i]f such an understanding of how to measure the claimed [feature] was within the scope of knowledge possessed by one of ordinary skill in the art, there is no

requirement for the specification to identify a particular measurement technique." *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1319 (Fed. Cir. 2015).

## II. CONSTRUCTION OF DISPUTED TERM

**"substantially entirely under the influence of natural convection"**[1]

| |
|---|
| **Plaintiffs** |
| At a pressure near or below atmospheric pressure and without the influence of the power burner, such that a Category I venting system can be used |
| **Defendant** |
| Indefinite |
| **Court** |
| At a pressure near or below atmospheric pressure and without the influence of the power burner, such that a Category I venting system can be used |

The asserted claim reads:

1. A method of interfacing a natural convection vent construction with a water heater, the method comprising:

   providing a water heater having a burner, a blower, and a flue;

   creating products of combustion with the burner;

   forcing the products of combustion into the flue under positive pressure with the blower;

   interposing an exhaust plenum between the flue and the natural convection vent construction;

   dropping the pressure of the products of combustion to near atmospheric pressure within the plenum; and

   permitting the products of combustion to rise out of the plenum and into the natural convection vent construction ***substantially entirely under the influence of natural convection***;

   wherein the natural convection vent construction includes a draft hood, the method further comprising mixing ambient air with the products of combustion as the products of combustion flow into the draft hood.

('897 patent at 6:9-27) (emphasis added)

---

[1]Claim 1 of the '897 patent.

5

The '897 patent claims a system in which combustion products from a hot water heater are forced through a flue tube under the influence of a power burner. (*See* '897 patent at abstract, 1:67-2:4) The pressure of these combustion products is then dropped while they traverse the plenum, after which point they exit the system into the natural convection vent. (*Id.* at 3:9-4:19)

Defendant argues that the claim is indefinite because a person of ordinary skill in the art ("POSA") would not understand the degree of influence that the power burner, and other non-natural convection factors, continue to exert on combustion products as they exit into the vent construction. (D.I. 40 at 9-10; D.I. 45 at 2-5; Tr. at 5-6) Specifically, Defendant asserts that by claiming "substantially entirely," "the '897 Patent leaves unanswered the question of whether power burner 60 may exert any 'influence,' let alone identify any objective boundaries regarding how much 'influence' (if any) from power burner 60 is allowed within the scope of claim 1." (D.I. 40 at 10)

Defendant has not met its burden of proof – clear and convincing evidence – that the term fails to provide a POSA reasonable certainty as to the scope of the invention. *See Nautilus*, 134 S. Ct. at 2124-25; *Sonix Tech. Co., Ltd. v. Publ'ns Int'l Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). As Plaintiffs argue, the disputed term must be read in the context of the specification and the claim as whole. The patent describes a sequence of events within the hot water heater and plenum, and is sufficient to instruct a POSA as to the meaning of "substantially entirely under the influence of natural convection."[2] Further, the specification describes "uncouple[ing] the

---

[2]Plaintiffs accurately summarize the steps of claim 1:

> [T]he first step is providing a water heater having a burner, a blower and a flue. . . . The second step is creating products of combustion with the burner. The third is forcing the products of

6

flow of the products of combustion from the power burner" ('897 patent at 4:12-17) and compatibility with Category I venting (*id.* at 4:17-19).

Contrary to Defendant's contentions, "near or below atmospheric pressure" is neither redundant nor inconsistently broader than the prior claimed "near atmospheric pressure." (D.I. 45 at 4-5) The asserted claim involves a sequence of steps; "near atmospheric temperature" relates to the state of the products of combustion at an earlier step than "near or below atmospheric temperature." Also, "without the influence of the power burner" does not ignore potential "other influences" in the combustion products. (*Id.* at 6-7) Instead, as Plaintiffs explain and a POSA would understand, "other than natural convection, nothing else is going to be a significant influence." (Tr. at 32) The Court will adopt Plaintiffs' construction.[3]

## III. CONCLUSION

The Court will construe the disputed term as explained above. An appropriate Order follows.

---

combustion into the flue under positive pressure with the blower. The fourth is interposing an exhaust plenum between the flue and the natural convection vent construction. The fifth step, is dropping the pressure of the products of combustion to near atmospheric pressure within the plenum. . .

(Tr. at 18-19; *see also id.* at 24-25)

[3] Both parties included expert declarations in support of their positions (*see* D.I. 40-1, 42, 43, 45-1), but the Court did not find it necessary to rely on these declarations in reaching its construction.

7